UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CARL LEE LEDFORD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No. 1:18-CV-363-HAB |
| SHANE LAMARTZ, | ) ) ) | |
| Defendant. | ) ) | |
| CARL LEE LEDFORD, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No. 1:18-CV-365-HAB |
| ROGELIO ESCUTIA, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On October 20, 2020, Plaintiff filed a motion in these joined cases which, apart from accusing the Court of conspiring against him, requested a hearing on the Court's October 19, 2020, dismissal of his case for failure to prosecute. The motion asserts, generally, that his repeated failures to attend scheduled hearings in these cases are the result of mailed notices either not reaching him in time or at all, and therefore his lawsuit against the Defendant officers should be reinstated. The Court ordered Defendants to respond, and they did so on November 3, 2020. Having reviewed the record in this case, the filings of the parties, and information provided by the clerk's staff, the Court finds no reason to hold a hearing on Plaintiff's scurrilous allegations and denies any request to set aside the judgment.

A.      **Factual and Procedural Background**

1.      *History of Undeliverable Mail and Missed Hearings*

A recurring issue in this case has been Plaintiff's failure to provide the Court with accurate and complete contact information. Plaintiff has never provided the Court with an email address or telephone number, meaning that all notices, orders, and other correspondence from the Court has necessarily been sent via the United States Postal Service. Therefore, having an accurate mailing address for Plaintiff was of vital importance. Unfortunately, Plaintiff moved regularly, often failing to update this vital information with the Court.

The Court verified Plaintiff's initial mailing address at the Rule 16 Preliminary Pretrial Conference (ECF No. 48)[1]. Seven months later, Plaintiff moved from Fort Wayne to Michigan City, filing the appropriate notice with the Court. (ECF No. 103). Only two months later, Plaintiff moved again, and again notified the Court of his new address. (ECF Nos. 122, 123). So far, so good, but this notice would signal the end of Plaintiff's timely updates.

Throughout April and May of 2019, multiple opinions and orders of the Court were returned as undeliverable. (ECF Nos. 129, 131, 136). As a result of Plaintiff's failure to provide the Court with a correct mailing address, Magistrate Judge Collins held a show cause hearing on April 25, 2019. During that hearing, Plaintiff advised that he had returned to Fort Wayne and provided the Court with a new mailing address: 3324 Sequoyah Pass, Fort Wayne, IN 46816. (ECF No. 137). Because a motion for summary judgment filed by a now-dismissed defendant had also been returned undeliverable, the Court granted Plaintiff an additional thirty days within which to file a response. (*Id*. at 1–2).

---

[1] All references to the docket herein will be to the docket in 1:18-CV-363.

On August 13, 2019, Plaintiff failed to attend a hearing for the first time. Plaintiff failed to attend a second hearing on February 3, 2020. The Court notes that the orders setting both hearings appear to have been delivered as neither were returned to the Court. Nonetheless, Plaintiff now asserts, without evidence, that his failure to attend these hearings was because "he was not properly notified that a hearing was being held." (ECF No. 206 at 2).

**B.**     *Following the Continuation of his Trial, Plaintiff Stops Participating*

After several continuances, trial in this matter was set for September 22, 2020. A final pre-trial conference was held on September 8, 2020, and the parties proceeded to file the necessary pre-trial filings. (*See* ECF Nos. 176–86). Less than a week before trial, Defendants filed a Notice to the Court Regarding Defendant Escutia's Military Service. (ECF No. 188). According to that filing, counsel for Defendants did not attempt to hold a pre-trial meeting with Defendant Escutia until September 15, 2020, at which time they learned that he would be away on military orders during the scheduled trial. As such, they requested a continuance of the trial.

The Court was displeased with the timing of Defendants' motion. In a resulting order, the Court described the motion as "indicative of a troubling lack of diligence on the part of Defendants' counsel." (ECF No. 191 at 2). Nonetheless, the Court found that it was "not inclined to punish Defendant Escutia for serving in our nation's military." (*Id.*). Therefore, the trial was continued.

Understanding the frustration that the order would cause Plaintiff, the Court set the trial not only for a further primary setting but also multiple secondary settings. (ECF No. 189). In addition, status conferences were set before each of the settings "so as to advise the parties whether the case will proceed on those settings." (ECF No. 191 at 3, n.3). Both the order continuing and the opinion granting the continuance were sent to Plaintiff at the mailing address on file with the Court.

It is clear to the Court that Plaintiff became aware of the continuance; he did not appear for trial on September 22, 2020. Nonetheless, both first class and certified mail copies of the opinion were returned to the Court undeliverable. (ECF No. 195–96). On or about September 25, 2020, Plaintiff called into the clerk's office to determine the status of his case. During this call, Plaintiff was advised of each of the future settings for his trial with the corresponding status conference dates. The significance of primary and secondary settings was further explained. As of that phone call, then, Plaintiff had access to every date then-set, regardless of whether he received any prior or subsequent order by mail.

While Plaintiff was on the phone, clerk's staff noted that Plaintiff's mail was being returned. Staff repeatedly asked Plaintiff if the Court had Plaintiff's correct address. The only response given by Plaintiff was, "I haven't changed my address," which the clerk's staff interpreted as confirmation that the address was correct. In any event, Plaintiff provided no additional information to the Court regarding his contact information.

Following that telephone conversation, the clerk's staff on its own undertook an investigation into Plaintiff's address. It found that, in Plaintiff's witness list, he listed his address as 3324 Sequoyah Pass, Fort Wayne, IN 468*06*. (ECF No. 179 at 2). Surmising that the zip code may be the problem, the Court updated Plaintiff's address in its system and re-mailed the orders. (ECF No. 197). Thereafter, all orders were mailed both to the 46816 and 46806 addresses.

During the pendency of this case, Plaintiff has made many trips into the clerk's office to use the public terminal to check the docket. During one of those visits, upon seeing that a telephonic conference was set, Plaintiff remarked something to the effect of, "How are they going to have a telephone conference if they don't have my phone number?" Plaintiff was advised by clerk's staff that he would need to either provide a telephone number or appear in person. The

Court notes that Plaintiff had appeared in person for telephonic hearings previously. (ECF No. 140, 150).

The first of the rescheduled dates was a telephonic status conference on October 14, 2020, in advance of an October 27, 2020, secondary trial setting. October 14, 2020, arrived, and Plaintiff failed to appear. As a result, the Court issued an order resetting the hearing to October 19, 2020. (ECF No. 202). That order expressly provided that, "[f]ailure on the part of Plaintiff to appear **will** result in these matters being dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b)." (*Id*. at 2) (original emphasis). Plaintiff failed to appear for the October 19, 2020, hearing and the matter was dismissed. (ECF No. 204). Thereafter, the Court continued to receive returned mail sent to Plaintiff. (ECF Nos. 208–13, 15).

**3.**     *Post-Judgment Filings*

As noted above, Plaintiff filed the instant motion on October 20, 2020, the day after his case was dismissed. Notably, Plaintiff *does not* claim that he was unaware of the October 14, 2020, hearing. Instead, he claims that he did not receive the order setting the October 19, 2020, hearing until that day. Plaintiff further submitted to the Court that he had provided counsel for Defendants with "his new personal phone number and email address" on or about September 15, 2020. (ECF No. 206 at 3).

Defendants filed their Response in Opposition on November 3, 2020. (ECF No. 214). Defendants note, as the Court has above, that Plaintiff missed several hearings in advance of the dismissal. Defendants agreed that they were provided with Plaintiff's email address, and do not deny that they have Plaintiff's telephone number, but assert that this "has nothing to do with the plaintiff's responsibilities to keep the *Court* updated with his current contact information." (*Id*. at

5

2) (original emphasis). Accordingly, the Defendants ask the Court to reject Plaintiff's request for a hearing and leave the dismissal in place.

**B.     Legal Discussion**

**1.     *Dismissal is the Appropriate Sanction for Plaintiff's Contumacious Behavior***

"Dismissal with prejudice is appropriate when there is a clear record of delay or contumacious behavior." *Zaddack v. A.B. Dick Co.*, 773 F.2d 147, 150 (7th Cir. 1985). "A court may infer lack of prosecutorial intent from, inter alia: (1) the withdrawal of an attorney; (2) failure to appear at a scheduled hearing; and (3) failure to appear on time." *Id.* (citations omitted). While the Seventh Circuit has held that a single missed filing deadline or status hearing does not support dismissal for failure to prosecute, *see Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Del Carmen v. Emerson Elec. Co.*, 908 F.2d 158, 163 (7th Cir. 1990); *Schilling v. Walworth Cnty. Park & Planning Comm'n*, 805 F.2d 272, 276 (7th Cir. 1986), it has upheld dismissal for plaintiffs who fail to attend multiple hearings and have been warned of the possibility of dismissal, *see Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 666 (7th Cir. 2006); *Ball v. City of Chi.*, 2 F.3d 752, 753–54 (7th Cir. 1993); *see also Alston v. Deutsch Borse, AG*, 80 Fed.Appx. 517, 520 (7th Cir. 2003); *Malone v. Foster Wheeler Constructors, Inc.*, 21 Fed.Appx. 470, 472 (7th Cir. 2001); *Dax v. Am. Bd. of Psychiatry and Neurology, Inc.*, 10 Fed.Appx. 364, 366–67 (7th Cir. 2001); *Swarm v. Siemens Bus. Commc'ns Sys., Inc.*, 9 Fed.Appx. 512, 515 (7th Cir. 2001); *Walker v. Will Cnty. Sheriff's Dep't*, No. 95–2604, 1997 WL 697168, at *4 (7th Cir. Nov. 3, 1997) (nonprecedential decision). The Seventh Circuit has also affirmed dismissals where a single nonappearance was combined with other instances of violating court orders. *See Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 165 (7th Cir. 1994); *Lockhart v. Sullivan*, 925 F.2d 214, 219 (7th Cir. 1991); *see also Schmidt v. Campanella Sand & Gravel Co., Inc.*, 49 Fed.Appx. 647, 650 (7th Cir. 2002).

Plaintiff attempts to downplay his repeated failure to attend hearings by focusing on the final hearing, claiming that he did not receive notice of that hearing[2] in advance. The problem with this argument is that he has no credible excuse for missing any of the prior three hearings. *McInnis v. Duncan*, 697 F.3d 661, 664 (7th Cir. 2012) (noting that plaintiff "never explained his *first* absence or asserted that he had good cause for missing that hearing") (original emphasis). This is particularly true of the October 14, 2020, hearing. Plaintiff does not disavow knowledge of this hearing. Indeed, he can't; he made contemptuous comments to the clerk's staff mocking the Court's inability to reach him by telephone. Even if the Court were inclined to forgive the last failure to appear, Plaintiff still has three unexplained absences in his column.

This is to say nothing of the fact that Plaintiff willfully withheld important contact information from the Court. While the Court does not know when Plaintiff obtained a phone number and email address, it does know from his filing that it was September 2020 at the latest. (ECF No. 206 at 3). This information was never provided to the Court. It goes without saying that the Court would have had much more success reaching Plaintiff for a telephonic hearing had Plaintiff provided the Court with his telephone number.

In addition, Plaintiff refused to provide the clerk with updated address information despite his knowledge that he was not receiving mail. Plaintiff had been expressly advised in this case that his "failure to keep the clerk informed of a current address could result in the dismissal of this action for failure to prosecute or failure to follow a court order." (ECF No. 137 at 2). This is exactly what occurred. This is not a case where some force outside of Plaintiff's control caused confusion

---

[2] The Court also notes that Plaintiff's focus on the October 19, 2020, hearing, while downplaying the October 14, 2020, hearing, makes little sense. The fact of the matter is that the October 19, 2020, hearing would never have occurred had Plaintiff not decided to ignore the October 14, 2020, hearing. Had Plaintiff appeared as ordered, there would have been no order for Plaintiff to receive (or not), and no dismissal would have been entered. It was Plaintiff that created the situation whereby his case could be dismissed; he is hard-pressed to complain that the dismissal came to pass.

regarding the date and time of hearings. *See Sroga v. Huberman*, 722 F.3d 980, 983 (7th Cir. 2013) (plaintiff's mother intercepted court mailings). Instead, Plaintiff allowed the Court to continue sending mailings to an address at which he knew he was not receiving mail. If Plaintiff failed to receive notice of the October 19, 2020, hearing, it was only because he refused to help the Court assure that the notice would be received.

Before dismissing a case for failure to prosecute, a district court judge should consider "the frequency and magnitude of the plaintiff's failures to comply with deadlines," "the apportionment of responsibility for those failures between the plaintiff and his counsel," "the effect of the failures in taxing the judge's time and disrupting the judge's calendar," the prejudice to the defendant, and "the probable merits of the suit." *Schmidt*, 49 Fed.Appx. at 650 (quoting *Ball*, 2 F.3d at 759–60). These factors amply support dismissal. Plaintiff missed four separate hearings, more than enough to warrant dismissal. *See*, *e.g.*, *Fischer*, supra. Plaintiff, acting as his own counsel, bears full responsibility for his failures. As the Court has noted in the past, Plaintiff's failures have taxed the Court's resources. (ECF No. 204 at 2)[3].

The Court concedes that the prejudice to Defendants is slight (more on that later). However, also slight are the apparent merits of Plaintiff's claims. Plaintiff initially named nine different individuals, six law enforcement departments, six Indiana cities, six counties, and the State of Indiana as defendants. (ECF No. 70 at 1). Plaintiff's claim alleged a state-wide conspiracy to violate his civil rights, accomplished via what Plaintiff claims were multiple, illegal traffic stops. (*Id*. at 5–55). After numerous adverse rulings, Plaintiff's claim now consists of two, relatively

---

[3] "The Court would also note the significant resources that have been, and would be, spent on these matters. Defendants have appeared at every one of the hearings skipped by Plaintiff, leading directly to the expenditure of unnecessary attorney time. This Court, too, has taken time away from other matters to prepare for and attend all scheduled hearings. If these matters were allowed to proceed to trial, currently scheduled for October 27, 2020, this Court would need to summon 35 jurors, at $50 per day plus mileage, with no assurance that Plaintiff would appear. At a minimum, then, the Court would have to spend $1,750 on jurors alone, to say nothing of its time and Defendants' time. The Court is unwilling to expend these amounts on the chance that Plaintiff might decide to appear."

innocuous traffic stops. (*Id*. at 30–38). Plaintiff was not arrested after either stop and no force was used against him. (*Id*.). Even if Plaintiff prevailed, then, any damages would presumably be minimal. True, Plaintiff was entitled to bring these actions in this Court. However, this Court is not compelled to carry such a case in the face of Plaintiff's failure to appear.

Weighing the relevant considerations, the Court concludes that dismissal was, and is, appropriate. And, since Plaintiff's motion raises no issues that would change this determination, no hearing is necessary. Plaintiff's motion, then, will be denied.

**2.**     ***The Conduct of the Indiana Attorney General's Office***

"[L]awyers, who serve as officers of the court, have the first line task of assuring the integrity of the process. . . . The system can provide no harbor for clever devices to divert the search [for truth], mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457–58 (4th Cir. 1993).

As noted above, many of the issues in this case arose from Plaintiff's failure to provide the Court with accurate contact information. Counsel for Defendants were well-aware of this. At the October 14, 2020, hearing, the Court expressly noted that Plaintiff "failed to provide the Court with any contact information to allow the Court to initiate a telephonic status conference with him." All Plaintiff's returned mail appeared on the docket. Defendant's most recent filing goes so far as to highlight Plaintiff's ongoing failure to update his contact information. (ECF No. 214 at 2).

Against this background, the Court is taken aback by the Attorney General's admission that it had Plaintiff's email address and telephone number since at least September 2020. The Court cannot understand how two Deputy Attorneys General could sit through not one, but two, hearings in October 2020 and not share this information with the Court. These two attorneys allowed the

9

Court to go so far as to dismiss Plaintiff's case, largely based on the Court's lack of contact information for Plaintiff, without ever interjecting that they, in fact, *had the information the Court required*.

The Indiana Attorney General should know better and should hold itself to a higher standard. The office holds itself out as the protector of the "rights, freedoms, and safety" of Indiana citizens. https://www.in.gov/attorneygeneral/. It regularly enters its appearance in cases pending before the Court and is reminded of its duty of candor to the Court.

**C.     Conclusion**

For the foregoing reasons, Plaintiff's October 20, 2020, motion (ECF No. 206) is DENIED.

SO ORDERED on November 16, 2020.

      s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT